IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02814-MEH

THE KITCHEN CAFÉ, LLC,

      Plaintiff,

v.

WOLFGANG PUCK LICENSING LLC,

      Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is Plaintiff's Motion for Jurisdictional Discovery [filed February 3, 2017; ECF No. 26]. The matter is fully briefed and the Court finds that oral argument, not requested by the parties, will not assist in its consideration of the motion. For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

## I.     Background

      Plaintiff (The Kitchen Café or "TKC") initiated this action on November 18, 2016, asserting claims of trademark infringement under federal and state law against Defendant (Wolfgang Puck Licensing LLC or "WPL"). Compl., ECF No. 1. On January 6, 2017, WPL responded by filing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction or, in the alternative pursuant to 28 U.S.C. § 1631 to improper venue. Mot., ECF No. 12. With respect to personal jurisdiction, WPL argues TKC has failed to allege sufficient facts demonstrating that WPL is subject to personal jurisdiction in Colorado. In particular, WPL contends it "does no business in Colorado, . . . has no relevant jurisdictional contacts with Colorado . . . ," and "none of the allegedly

infringing acts have occurred in Colorado." *Id.* 1.

      With its response to the Motion to Dismiss, TKC filed the present motion asking the Court to permit limited discovery regarding certain jurisdictional issues raised in WPL's motion to dismiss. Specifically, WPL seeks dismissal contending the Court lacks personal jurisdiction over it because the only connection it has with Colorado is as follows, which is insufficient to demonstrate personal jurisdiction:

> The only restaurant operating in Colorado using any of WPL's marks is the WOLFGANG PUCK EXPRESS restaurant at the Denver International Airport in Denver, Colorado ("WOLFGANG PUCK EXPRESS at DIA"). (Kaplan Decl. ¶ 25; Essa Decl. ¶ 24.) There are a number of WOLFGANG PUCK EXPRESS branded restaurants in various locations in the United States, but they are generally owned and operated by franchisees which have no direct relationship to WPL. (Essa Decl. ¶ 28.) WPL does not own, operate, directly license or directly control the WOLFGANG PUCK EXPRESS at DIA. (Kaplan Decl. ¶ 25; Essa Decl. ¶ 24-25.)

> WPL has licensed the WOLFGANG PUCK EXPRESS mark to Wolfgang Puck Worldwide, Inc. ("Worldwide") for use with the various restaurants and related services. (Essa Decl. ¶ 23.) Worldwide has sub-licensed the WOLFGANG PUCK EXPRESS mark to Wolfgang Puck Express Licensing, LLC. ("Express"). (Id.) Typically, Express enters into franchise agreements with other entities which own and operate the individual WOLFGANG PUCK EXPRESS branded restaurants. (Id.) The WOLFGANG PUCK EXPRESS at DIA is owned and operated by F&B Concessions, LLC pursuant to a franchise agreement with Express. (Essa Decl. ¶ 24-25.) Neither Worldwide, nor Express own or operate the WOLFGANG PUCK EXPRESS at DIA. (Id.) The entity immediately responsible for quality control pertaining to the WOLFGANG PUCK EXPRESS at DIA is Express. (Essa Decl. ¶ 28.)

> * * * *

> The existence of the WOLFGANG PUCK EXPRESS at DIA is not sufficient to establish general jurisdiction. WPL has no direct tie to the restaurant. It does not own, operate, directly control, support or conduct business visits to the restaurant. While the franchise uses marks which are ultimately owned by WPL, the marks have been licensed and sub-licensed through two separate corporate entities before reaching the franchisee. WPL does not exercise direct quality control and monitoring of the WOLFGANG PUCK EXPRESS at DIA. Instead, those duties lie with Express, which is party to the contract with the franchisee.

Motion to Dismiss, ECF No. 12 at 5–6, 12.  In light of this argument, TKC "seeks to (1) serve written interrogatories and requests for documents on the three entities discussed in Defendant's Motion, namely Defendant, Wolfgang Puck Worldwide, Inc. and Wolfgang Puck Express Licensing, LLC and (2) depose the two declarants upon whose testimony Defendant relies in its Motion."  Mot. ¶ 3, ECF No. 26.

WPL counters that TKC cannot base its jurisdictional argument on a single meeting between the companies' principals, which occurred in Los Angeles; TKC seeks discovery of non-parties to this case in contravention of Fed. R. Civ. P. 26(b)(1); and, under the "first to file" rule, the discovery "will be futile because Worldwide and Express have already sued TKC in a different forum, the Northern District of Illinois, seeking a declaration that they are not violating TKC's alleged trademark rights or unfairly competing with TKC" (Resp. 4).  Alternatively, WPL argues that any discovery permitted should be limited in scope only to its contacts with Colorado and in measure only to one two-hour Rule 30(b)(6) deposition and six total written discovery requests.

TKC replies that "WPL cannot proffer limited information on its licensing structure to shield it from personal jurisdiction while, at the same time, preventing The Kitchen from 'looking behind' that licensing structure. WPL has made its licensing structure squarely relevant to the jurisdictional question by relying on it in its Motion to Dismiss."  Reply 2.  Further, TKC asserts that on the same day WPL filed its opposition to the present motion, Worldwide and Express filed a declaratory judgment action in the Northern District of Illinois against TKC seeking an order that they do not infringe TKC's trademark rights and alleging that if the action here is dismissed, "WPL will voluntarily submit to jurisdiction in this District"; TKC contends that such action demonstrates the "tight" relationship of the three entities and "only confirm[s] the need for jurisdictional discovery here." *Id.* at 3.  TKC also points out that the Illinois action demonstrates WPL's request to transfer

venue to Nevada or California is inconsistent with its contention that it would be "burdensome and unfair" to litigate in Colorado. *Id.* at 4. TKC seeks an order permitting discovery of the relationships of the Puck entities to each other, their activities in Colorado, and the circumstances surrounding "WPL's choice to adopt THE KITCHEN for its own use"; to accomplish this discovery, TKC asks for Rule 30(b)(6) depositions of WPL's declarants, each lasting a full day; a total of thirty written discovery requests; and a confirmation that the discovery "will not count against its fact discovery limits." *Id.* at 12-13.

## II.     Discussion

In the Tenth Circuit, either party should be allowed discovery regarding factual issues raised in a motion to dismiss for lack of jurisdiction. *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). It is an abuse of discretion to refuse such discovery "where pertinent facts bearing on the question of jurisdiction are controverted" or "where a more satisfactory showing of the facts is necessary." *Id.*; *see also Dutcher v. Matheson*, 840 F.3d 1183, 1195 (10th Cir. 2016).

In this case, the Court finds TKC has insufficient information to actually controvert WPL's contention that it has no contacts in Colorado, including any that may arise through Worldwide and/or Express. However, the Court agrees that WPL's jurisdictional argument and the declarations supporting it raise factual questions that necessitate a "more satisfactory showing." That is, TKC will be permitted to discover the relationship among WPL, Worldwide, and Express for purposes of determining general personal jurisdiction. Although WPL contends such discovery is overbroad and improper for the resolution of its motion to dismiss, the Court finds that prevailing law in Colorado permits the consideration of an "alter ego" or "agency" theory to determine general personal jurisdiction:

4

In *Quarles* [*v. Fuqua Indus., Inc.*, 504 F.2d 1358 (10th Cir. 1974)], the Tenth Circuit discussed the alter ego theory and then went on to discuss the agency theory, both with respect to personal jurisdiction. 504 F.2d at 1364. Explaining the Kansas alter ego theory, the Court stated that "[u]nder this doctrine, the corporate entity is disregarded and liability fastened on an individual who uses the corporation merely as an instrumentality to conduct his own personal business. The liability must arise from fraud or injustice perpetrated on third parties dealing with the corporation." *Id.* (internal citations omitted) (emphasis added). Given this articulation of the alter ego theory, it is evident why Plaintiff is not pursuing it: Plaintiff never had any dealings with Geneva. Regarding the agency theory, the Tenth Circuit stated that "as all corporations must necessarily act through agents, a wholly owned subsidiary may be an agent and when its activities as an agent are of such a character as to amount to doing business of the parent, the parent is subjected to the in personam jurisdiction of the state." *Id.* (quoting *Curtis Publ'g Co. v. Cassel*, 302 F.2d 132, 137 (10th Cir. 1962)) (emphasis in original). Given the Tenth Circuit's language "an instrumentality to conduct his own personal business" in reference to the alter ego theory, and "doing business of the parent" in reference to the agency theory, it is difficult to see a significant distinction between the two theories for jurisdictional purposes. It appears that the only difference is that under the alter ego theory, the plaintiff and the corporate subsidiary must have actually had dealings from which the cause of action arose.

For purposes of personal jurisdiction, agency and alter ego, while different legal concepts, often depend on the same facts when parent and subsidiary corporations are involved. Particularly, facts concerning the amount of control exercised by the corporate parent over its subsidiary are relevant for both theories. Such control could be evidence that the subsidiary is the parent's alter ego because the subsidiary has no real separate corporate existence. Similarly, such control could be evidence that the subsidiary is the parent's agent because the subsidiary is conducting the "real" business of the parent, which is formally only a holding company. The objective of either theory is to establish that the parent company has the minimum contacts with the forum necessary to support a finding of general jurisdiction.

Plaintiff itself, while emphasizing that it does not argue the alter ego theory, cites authority such as *Flank Oil* [*Co. v. Continental Oil Co.*, 277 F. Supp. 357 (D. Colo. 1967)], which is an "alter ego theory" case. *See* 277 F. Supp. at 360. Because both agency and alter ego theories often depend on the same type of evidence regarding day to day control or entanglement, the Court looks to cases such as *Flank Oil* regardless of which theory they concern, as long as the cases illustrate the degree of corporate control necessary for a court to exercise personal jurisdiction over the corporate parent.

*SGI Air Holdings II LLC v. Novartis Int'l AG*, 239 F. Supp. 2d 1161, 1165–66 (D. Colo. 2003). *see*

*also Benton v. Cameco Corp.*, 375 F.3d 1070, 1080–81 (10th Cir. 2004) (plaintiff failed to allege

or produce evidence showing that parent company was "the general agent or alter ego of" defendant for purposes of determining general personal jurisdiction).  The Supreme Court's opinion in *Daimler AG v. Bauman*, -- U.S. --, 134 S. Ct. 746 (2014) is not inconsistent; there, the Court rejected an agency theory based solely on the "importance" of a subsidiary's services to the corporate parent, gauged by the parent's readiness to perform the services if the subsidiary did not exist.  *Id.* at 759 ("Formulated this way, the inquiry into importance stacks the deck, for it will always yield a pro-jurisdiction answer.").

Because there exist factual issues concerning the structure among WPL, Worldwide, and Express, the latter of which admittedly has a possible tie to Colorado, the Court finds good cause to allow limited discovery into the relationship of the three entities and their activities (if any) in Colorado for purposes of determining general personal jurisdiction.[1]  *See Mathys v. Narconon Fresh Start*, 104 F. Supp. 3d 1191, 1201 (D. Colo. 2015) ("where the licensor takes a more active role in the licensee's business, personal jurisdiction may lie.") (citing *Hydraulics Unlimited Mfg. Co. v. B/J Mfg. Co.*, 323 F. Supp. 996, 999 (D. Colo.) (noting that while royalty payments alone did not constitute sufficient minimum contacts, "other factors, such as extended negotiations, the defendants' presence, or substantial and related business activity in Colorado" could point to a "different conclusion"), *aff'd*, 449 F.2d 775 (10th Cir. 1971)).

Although the Court finds that some discovery is warranted, the Court is not persuaded that the extent of discovery requested by TKC is necessary or efficient.  Instead, the Court will permit Plaintiff to serve Defendant with five (5) interrogatories and five (5) requests for production of

---

[1]TKC does not persuade the Court that discovery into "the circumstances surrounding WPL's choice to adopt THE KITCHEN for its own use" is necessary for a personal jurisdiction analysis.  Moreover, although WPL focused a portion of its response on TKC's specific personal jurisdiction argument (which was not addressed in the motion), TKC raised this requested "scope" of discovery for the first time in its reply brief, which WPL had no opportunity to rebut.

documents regarding the issue of personal jurisdiction.  These discovery requests will not be subtracted from the total number allotted to TKC by the operative Scheduling Order or the federal rules.  The Court will also permit TKC to take one seven-hour deposition pursuant to Fed. R. Civ. P. 30(b)(6).  This deposition will not count against those allotted to Plaintiff by the operative Scheduling Order or the federal rules.

The parties shall conduct this discovery as follows:

1.    TKC shall serve its written discovery requests on or before March 30, 2017;

2.    WPL shall serve its responses to the discovery requests on or before April 21, 2017; and

3.    TKC shall notice and take the Rule 30(b)(6) deposition on or before April 24, 2017.

The Court will temporarily stay the proceedings of this case, including briefing on WPL's motion to dismiss, pending completion of the discovery on April 24, 2017.  TKC shall file a supplemental response to the motion to dismiss on or before May 15, 2017 and WPL may file a supplemental reply in support of the motion on or before May 31, 2017.[2]  The supplemental briefs may be no more than ten pages in length.

## III.    Conclusion

For the reasons described above and for good cause shown, Plaintiff's Motion for Jurisdictional Discovery [filed February 3, 2017; ECF No. 26] is **granted in part** and **denied in part** as set forth herein.  TKC shall bear the costs of all jurisdictional discovery.

---

[2]In the interest of judicial economy and efficiency, the Court will not set deadlines based on uncertain dates.

Entered and dated at Denver, Colorado, this 23rd day of March, 2017.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge